IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |  |
|---|---|---|
| CARLETT FLEMING-DUDLEY and CLARENCE DUDLEY, | ) ) ) ) | |
| Plaintiffs, | ) | No. 05 C 4648 |
| v. | ) ) | Hon. Mark Filip |
| LEGAL INVESTIGATIONS, INC., PATRICK K. WILLIS COMPANY, INC., d/b/a AMERICAN RECOVERY SERVICE, and THOMAS VITELLO, | ) ) ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS

Plaintiffs, Carlett Fleming-Dudley and Clarence Dudley, allege that their rights were violated during the repossession of their car. They aver causes of action under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.*, the federal civil rights statute, 42 U.S.C. § 1983, and various state statutory and common law doctrines. The present defendants are, as Plaintiffs have denominated them: "Legal Investigations, Inc." (also "Legal Investigations"), "Patrick K. Willis Company, Inc., d/b/a American Recovery Service," and "Thomas Vitello." (D.E. 70.)

Plaintiffs filed their original complaint on August 12, 2005. (*See* D.E. 1.) Plaintiffs filed their first Amended Complaint on December 8, 2005, substituting Patrick K. Willis Company as a defendant for the originally named defendant "American Recovery Service." (*See* D.E. 21.) The operative complaint is Plaintiffs' Second Amended Complaint, which was filed on June 23,

2006. (*See* D.E. 70.)[1] Defendants have moved to dismiss Plaintiffs' Second Amended Complaint for failure to state a claim under Rule 12(b)(6). For the reasons stated below, Defendants' motions to dismiss (D.E.83, D.E. 101-2) are granted in part and denied in part.

## FACTS

The following facts are taken from the Second Amended Complaint. (D.E. 70.) The Court accepts the allegations as true, as precedent instructs, for present purposes. The Court takes no position on whether any of the allegations are actually well founded. In reciting the facts, the Court will accept Plaintiffs' convention (*see, e.g., id.* at 2) of referring to what Plaintiffs denominate as "Patrick K. Willis Company, Inc. d/b/a American Recovery Service," as "American Recovery." (*See, e.g., id.* (so defining the term for the remainder of the Second Amended Complaint).) In doing so, the Court does not prejudge the statute of limitations/propriety of service arguments which relate to the identity of this defendant.

In August 2004, Wells Fargo hired American Recovery to repossess Ms. Dudley's vehicle. (*Id.* ¶ 6.) American Recovery in turn used Legal Investigations to repossess the car. (*Id.*) On August 14, 2004, at 4:00 a.m., Ms. Dudley received a phone call but she did not answer it because she was asleep. (*Id.* at ¶ 13.) The answering machine picked up the call and an unidentified male left a message stating, "This is Legal Investigations, I want to speak to Carlett Dudley!" or words to that effect. (*Id.* ¶ 14.) Ms. Dudley realized that the call was coming from her building's intercom system and that the caller was downstairs. (*Id.* ¶ 15.) The caller called back about four times, and then, about five minutes later, someone entered Ms. Dudley's secured

---

[1] Susan Vitello, named as a defendant in the first two complaints, was voluntarily dismissed on Plaintiffs' oral motion on April 6, 2006. (*See* D.E. 58.)

building and began to bang and kick at her front door as if trying to break it down. (*Id.* ¶¶ 16–17.) Ms. Dudley and her husband were terrified. (*Id.* ¶ 18.) Mr. Dudley grabbed a baseball bat and yelled, "Who the hell is coming into my house?" or words to that effect, and the unidentified male responded, "This is Legal Investigations, I am Officer White, come to the door!" or words to that effect. (*Id.* ¶¶ 19–20.)

Mr. Dudley stated, "What do you want?" (*Id.* ¶ 21.) The man stated that he was there to repossess Ms. Dudley's "Jimmy," and he demanded that the Plaintiffs put the keys through the door. (*Id.* ¶¶ 22–23, 25–26.) The Plaintiffs refused to turn over the keys, and Mr. Dudley repeatedly claimed that his wife was not home. (*Id.*) The man from Legal Investigations expressed his view that Mr. Dudley was not telling the truth about his wife's purported absence. (*Id.* ¶ 24.)

The man from Legal Investigations yelled that he was going to the Dolton Police Department to file charges against Plaintiffs for grand theft auto. (*Id.* ¶¶ 28.) Mr. Dudley claimed that he could not find the keys for the car. (*Id.* ¶ 29.) The repossession man explained that he therefore would go to the police station. (*Id.* ¶ 30.) About three minutes later, the repossession man called and left a message that he was two minutes from the police station and that Ms. Dudley had exactly two minutes to call him back to arrange to give him the keys, or else he was going to file charges against her. (*Id.* ¶¶ 31–32.) Ms. Dudley told her husband to call the repossession man back and tell him that the keys would be outside their door when he returned for them. (*Id.* ¶¶ 33–34.)

As soon as Mr. Dudley opened the door to leave the keys, a man was waiting to receive them. (*Id.* ¶ 35.) The repossession man was unable to start the car, however. (*Id.* ¶ 36.) He

3

conferred with Mr. Dudley about whether there was another key to the car, and then Mr. Dudley and Ms. Dudley watched from the window as the repossession man and a colleague rummaged through the car, looked under the hood, and hammered on what appeared to be the ignition and steering column. (*Id.* ¶¶ 37–39.) Around 6:00 a.m., the repossession men left without taking the car. (*Id.* ¶ 40.)

Ms. Dudley and Mr. Dudley discovered that the repossession men had pulled everything out of the glove compartment; that the steering column was loose and the panel covering the column was broken; that the wires to the column had been pulled out and cut; that the ignition was damaged from having something jammed into it; that fuses had been taken from the fuse box; and that the battery cable had been pulled loose and cut. (*Id.* ¶ 41.)

Two days later, on August 16, 2004, the repossession men from Legal Investigations came back to the apartment complex and towed the truck. (*Id.* ¶ 43.) On August 31, 2004, Ms. Dudley picked up the vehicle from Legal Investigations. (*Id.* ¶ 44.) It was damaged and was not in the same operating condition as it was before the repossession, and some of Ms. Dudley's personal belongings were missing from the truck. (*Id.* ¶ 45.) She was made to pay a $100 storage fee when she reclaimed the truck. (*Id.*)

Counts I, II, and III of the ten-count Second Amended Complaint allege that Legal Investigations and Thomas Vitello, the president and a shareholder of Legal Investigations, violated §§ 1692c, 1692d, and 1692e(4), 1692e(5), and 1692e(7) of the FDCPA. (*Id.* ¶¶ 48, 51, 55.) Count V purports to advance a claim under 42 U.S.C. § 1983 for alleged violations of Plaintiffs' Fourth and Fifth Amendment rights. (*Id.* ¶ 76.) Counts IV, VII, IX, and X allege Illinois common law violations against Legal Investigations and American Recovery for

4

intentional infliction of emotional distress (*see id.* ¶¶ 57–69), conversion (*id.* ¶¶ 95–99), the "tort of wrongful repossession" (*id.* ¶¶ 104–06), and "property damage" (*id.* ¶¶ 107–10). Count VI alleges that the Defendants violated the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/2 ("Illinois Consumer Fraud Act"), when the repossession man who came to reclaim the car misrepresented himself to be a police officer and misrepresented that Mr. Dudley would be arrested for grand theft auto. (*See id.* ¶¶ 79–81.) Count VIII alleges that American Recovery is vicariously liable for Legal Investigations' FDCPA violations (*See id.* ¶ 102.)

For the reasons discussed below, Defendants' motions to dismiss are granted as to Count V (the Section 1983 claim) with respect to all Defendants. Likewise, Counts I, II, and III are dismissed, but Plaintiffs have sufficiently stated a claim against Legal Investigations under § 1692f(6) of the FDCPA, so potential FDCPA liability has not dropped out of the case for Legal Investigations. All claims against Mr. Vitello are dismissed without prejudice. Count VI (the ICFA claim) is dismissed as to Defendant American Recovery. Count X ("property damage") is dismissed without prejudice. Count VI (the ICFA claim as against Legal Investigations) and Count VIII (alleging FDCPA liablity against American Recovery) survive Rule 12(b)(6) challenge. Plaintiffs' remaining state law claims—Count IV (IIED), Count VII (conversion), and Count IX (wrongful repossession)—all survive.

## LEGAL STANDARDS

The purpose of a motion to dismiss under Rule 12(b)(6) is to test the sufficiency of the complaint—not to determine whether the plaintiffs will ultimately prevail, but to determine whether they are entitled to present evidence supporting their claims. Thus, the court must

accept a plaintiff's allegations as true and draw all reasonable inferences in the plaintiff's favor. *See, e.g., Bressner v. Ambroziak*, 379 F.3d 478, 480 (7th Cir. 2004). Only where "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief" is dismissal for failure to state a claim appropriate. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).

Generally, a pleading need only contain a "short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), such that it provides fair notice of the nature of the plaintiff's claim and the grounds upon which it rests. *See, e.g., Scott v. City of Chicago*, 195 F.3d 950, 951 (7th Cir. 1999). A charge of fraud, however, must be pleaded with particularity in federal court. *See* Fed. R. Civ. P. 9(b). The Seventh Circuit instructs that the complaint must allege "'the identity of the person making the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff.'" *Kennedy v. Venrock Assocs.*, 348 F.3d 584, 593 (7th Cir. 2003) (quoting *Sears v. Likens*, 912 F.2d 889, 893 (7th Cir. 1990), and collecting other cases); *accord DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990) (interpreting Rule 9(b) as requiring the "who, what, when, where, and how: the first paragraph of any newspaper story"). "The purpose . . . of the heightened pleading requirement in fraud cases is to force the plaintiff to do more than the usual investigation before filing his complaint." *Ackerman v. Northwestern Mut. Life Ins. Co.*, 172 F.3d 467, 469 (7th Cir. 1999).

## DISCUSSION

Plaintiffs allege federal claims under the FDCPA and 42 U.S.C. § 1983, as well as state statutory and common law claims. Because the pendent state claims are "so related to claims in

the action . . . that they form part of the same case or controversy under Article III," the Court has jurisdiction over those claims pursuant to 28 U.S.C. § 1367(a). *See, e.g., Jinks v. Richland County, S.C.*, 538 U.S. 456, 458–59 (2003) (quoting 28 U.S.C. § 1367(a)).

## I.   Claims Against Legal Investigations

Plaintiffs allege in Counts I, II, and III that, in repossessing Plaintiffs' truck, Legal Investigations violated §§ 1692c, 1692d, and 1692e(4), 1692e(5), and 1692e(7) of the FDCPA. (D.E. 70 ¶¶ 48, 51, 55.)  Count V alleges a § 1983 claim for purported violations of Plaintiffs' Fourth and Fifth Amendment rights. (*Id.* ¶ 76.)  Count VI alleges a violation of the Illinois Consumer Fraud Act (*id.* ¶ 79), and Counts IV, VII, IX, and X allege common law claims for intentional infliction of emotional distress (*id.* ¶ 63), conversion D.E. 70 ¶¶ 96–99), wrongful repossession (*id.* ¶ 105), and "property damage" (*id.* ¶¶ 108–10).  For the reasons discussed below, Defendants' motions to dismiss the claims against Legal Investigations are granted in part and denied in part.

### A.   FDCPA Claims (Counts I, II, and III)

Counts I, II, and III allege that Legal Investigations violated §§ 1692c, 1692d, and 1692e(4), 1692e(5), and 1692e(7) of the FDCPA when "Officer White" came to Plaintiffs' apartment complex to repossess Ms. Dudley's truck on August 14, 2004. (D.E. 70 ¶¶ 48, 51, 55.) Defendants argue that these claims must fail because (1) Legal Investigations is not a "debt collector" under § 1692a(6) of the FDCPA, and it is therefore not covered by the Act (D.E. 83 at 4–5; D.E. 101-2 at 8), and (2) Plaintiffs have not alleged a violation of § 1692f(6), which is the only provision that applies to firms such as Legal Investigations, whose principal purpose is to enforce security interests as opposed to collecting debts (D.E. 83 at 5; D.E. 101-2 at 8–9).  For

7

the reasons discussed below, this Court agrees with Defendants and grants their motions to dismiss Counts I, II, and III. The Court further finds, however, that Plaintiffs have stated a claim under § 1692f(6) of the FDCPA in the operative complaint.

The FDCPA generally regulates the actions a "debt collector" is permitted to take in collecting a debt. The Seventh Circuit has explained that the Act applies generally only to debt collectors, *Pettit v. Retrieval Masters Creditors Bureau, Inc.*, 211 F.3d 1057, 1059 (7th Cir. 2000), and only when their conduct is undertaken "in connection with the collection of any debt." *Neff v. Capital Acquisitions & Management Co.*, 352 F.3d 1118, 1121 (7th Cir. 2003) (quoting 15 U.S.C. § 1692e). Section 1692a(6) of the FDCPA defines a "debt collector" to include only those persons or businesses whose principal purpose is the collection of "debts," and thus "[r]epossession companies are ordinarily beyond the scope of the FDCPA." *Purkett v. Key Bank USA, Inc.*, No. 01 C 162, 2001 WL 503050, at *2 (N.D. Ill. May 10, 2001) (Leinenweber, J.) (citing 15 U.S.C. § 1692a(6)); *accord, e.g., Neff*, 352 F.3d at 1121. Section 1692(a)(6) also contains a limited exception to this definition, which states that "[f]or the purpose of section 1692f(6) of this title, such term also includes any person who uses any instrumentality of interstate commerce . . . in any business the principal purpose of which is the enforcement of security interests." 15 U.S.C. § 1692a(6); *see also Purkett*, 2001 WL 503050, at *2 (citing 15 U.S.C. § 1692a(6)). Therefore, Legal Investigations, which is in the business of repossessing collateral on behalf of a secured party, and was attempting to repossess Plaintiffs' vehicle during the events in question, may constitute a "debt collector" for purposes of § 1692f(6) only, even if it otherwise is not subject to the provisions of the FDCPA because it is not a "debt collector." *Id.*; *accord Neff*, 352 F.3d at 1121. This last caveat bears emphasis: Legal Investigations is

8

covered by the FDCPA *solely for purposes of § 1692f(6).  Accord, e.g., Jordan v. Kent Recovery Services, Inc.*, 731 F. Supp. 652, 657 (D. Del. 1990) ("Such a purposeful inclusion for one section of the FDCPA implies that the term 'debt collector' does not include an enforcer of a security interest for any other section of the FDCPA.").

In portions of their response, Plaintiffs all but concede that they cannot advance colorable claims under Sections 1692c, 1692d, and 1692e(4), 1692e(5), and 1692e(7); thus, for example, Plaintiffs title the lead section of their response to the motions to dismiss Counts I-III as follows: "Plaintiffs have adequately alleged that Defendants' conduct falls within the purview of the FDCPA because they repossessed in breach of the peace and thus did not have a present right to possession, *thus violating 15 U.S.C. § 1692(f)(6).*"  (D.E. 93 at 1 (emphasis added); *see also id.* at 2 n.3 (arguing that Plaintiffs can advance a colorable claim "under f(6)").  Defendants argue that the Court should not allow Plaintiffs to proceed on any Section 1692f(6) claim because that statutory subsection was not specifically identified in the Second Amended Complaint; however, such express statutory designation is not required because the facts stated in the operative complaint give fair notice of a potential Section 1692f(6) claim. *See, e.g., Higgs v. Carver*, 286 F.3d 437, 439 (7th Cir. 2002).  Indeed, Defendants in fact have appreciated the potential for just such a claim.  Accordingly, the Court will proceed to analyze the viability under Rule 12(b)(6) of a putative Section 1692f(6) claim.

Section 1692f(6) of the FDCPA prohibits "[t]aking or threatening to take any nonjudicial action to effect dispossession or disablement of property if—(A) there is no present right to possession of the property claimed as collateral through an enforceable security interest; (B) there is no present intention to take possession of the property; or (C) the property is exempt by law

9

from such dispossession or disablement." Plaintiffs argue that they have stated a claim under §
1692f(6) by alleging that Legal Investigations breached the peace while attempting to repossess
Plaintiffs' truck. (D.E. 93 at 3.) Drawing all reasonable inferences in Plaintiffs' favor, this Court
agrees that Plaintiffs have stated a claim under § 1692f(6) for purposes of Rule 12(b)(6) review.

To determine whether a debt collector had a present right to possession of the property
under § 1692f(6), courts in this district and elsewhere have looked to the applicable state self-
help repossession statute. *See, e.g., Purkett*, 2001 WL 503050, at *2 (citing *Clark v. Auto
Recovery Bureau Conn., Inc.*, 889 F. Supp. 543, 546 (D. Conn. 1994)). In other words, if the
debt collector violated the self-help repossession statute, by breach of the peace or otherwise,
then the collector had no present right to possession of the property under § 1692f(6). In Illinois,
the applicable self-help repossession statute is § 9-609(b)(2) of the Illinois Commercial Code; it
provides that, after default, a secured party may take possession of the collateral "without judicial
process, if it proceeds without breach of the peace." 810 ILCS 5/9-609(b)(2). Plaintiffs allege
that the repossession agent in this case (*i.e.*, "Officer White") breached the peace by falsely
representing himself as a police officer to convince Plaintiffs to turn over the keys to their truck.
(D.E. 70 ¶¶ 65, 80–81.)

Courts in Illinois have construed the phrase "breach of the peace" within the context of
self-help repossession generally. For example, *Leavitt v. Charles R. Hearn, Inc.*, 312 N.E.2d 806
(Ill. App. Ct. 1974), concluded that "implied force may . . . constitute a breach of the peace[,]"
and it rejected the argument that a finding of actual violence was necessary to a breach-of-the-
peace finding. *Id.* at 811. Several years later, *Dixon v. Ford Motor Credit Co.*, 391 N.E.2d 493
(Ill. App. Ct. 1979), held that "[w]hen a creditor repossesses in disregard of the debtor's

10

unequivocal oral protest, the repossession may be found to be in breach of the peace." *Id.* at 497 (citation omitted). More recently, an Illinois court concluded that the phrase "breach of the peace" connotes:

conduct which incites or is likely to incite immediate public turbulence, or which leads to or is likely to lead to an immediate loss of public order and tranquility. Violent conduct is not a necessary element. The probability of violence at the time of or immediately prior to the repossession is sufficient.

*Chrysler Credit Corp. v. Koontz*, 661 N.E.2d 1171, 1173 (Ill. App. Ct. 1996). Although the Defendants do not discuss this matter a great deal in the motions to dismiss, the Court notes that Plaintiffs seemingly could argue that the alleged actions of "Officer White"—banging and kicking at their front door in the middle of the night as if he was "trying to break it down," which in turn motivated Mr. Dudley to arm himself with a baseball bat and yell, "Who the hell is coming into my house?" (D.E. 70 ¶¶ 17, 19)—are enough for purposes of Rule 12(b)(6) to constitute a sufficient threat to public order and tranquility.

In addition, while Illinois courts seemingly have not had occasion to analyze the effect of alleged attempts to trick the debtor by false impersonation of a law enforcement officer or threats of imprisonment, courts outside of Illinois have addressed whether various ruses to trick the debtor into giving consent to repossession constitute "breach of the peace." In this regard, there appears to be little broad consensus among the cases. *Compare, e.g., Cox v. Galigher Motor Sales Co.*, 213 S.E.2d 475, 478, 480 (W. Va. 1975) (approving the practice of calling a debtor to ask him to bring a vehicle to a garage on the pretext of a need for repairs); *with Barham v. Standridge*, 148 S.W.2d 648, 649–50 (Ark. 1941) (disapproving such a practice); *see also K.B. Oil Co. v. Ford Motor Credit Co., Inc.*, 811 F.2d 310, 313–14 (6th Cir. 1987) (concluding that

11

misrepresentation to a third party that the owner of collateral gave permission for repossession does not constitute a breach of the peace). Nonetheless, one form of trickery that has tended to draw judicial disapproval is impersonation of a law enforcement officer. *See, e.g., Stallworth v. Doss*, 194 So.2d 566, 567 (Ala. 1967) (finding that a repossession constituted an unlawful taking where the repossessor "accosted the plaintiff on a street . . . showed him a badge and told him that 'I have orders to take your car'"). In addition, many cases hold that the presence of an actual law enforcement officer during a self-help repossession renders the repossession unlawful. *See, e.g., Waisner v. Jones*, 755 P.2d 598, 602 (N.M. 1988); *Stone Mach. Co. v. Kessler*, 463 P.2d 651, 655 (Wash. App. Ct. 1970). That is because, the analysis goes, the "presence of the official, without more, is sufficient to chill the legitimate exercise of the defaulting party's rights." *Waisner*, 755 P.2d at 602; *accord, e.g., MacLeod v. C & G Invest. Group (In re MacLeod)*, 118 B.R. 1, 3 (Bankr. D. N.H. 1990) (any presence of an officer, regardless of the officer's degree of participation in the actual repossession, "override[s] the debtor's right to object" and, as a result, is a breach of peace); *Stone Mach. Co.*, 463 P.2d at 655 (the presence of the officer, even when the officer did not take part in the repossession and merely showed up in local sheriff uniform, prevented the debtor from exercising his right to resist a nonjudicial repossession by reasonable means, which circumscribed the purpose and intent of the self-help statute and "amounted to constructive force, intimidation and oppression constituting a breach of the peace"). In other words, what seems to matter is the effect of the putative officer's presence on the debtor, not whether the repossessor is actually a law enforcement officer or merely impersonating one. Although not dispositive, the Court further notes that impersonating an officer constitutes a Class 4 felony under the Illinois Criminal Code. *See* 720 ILCS 5/32-5.1 (West 1998); *see also People*

*v. Thoennes*, 777 N.E.2d 1075, 1079–81 (Ill. App. Ct. 2002) (holding that flashing a badge and falsely claiming to be a police officer warrants conviction). That Illinois criminal statute exists to protect "citizens who would be harmed or deceived by those acting under the color of authority." *People v. Ellis*, 696 N.E.2d 1, 3 (Ill. App. Ct. 1998).

The issue of whether any particular impersonation of a police officer presents a meaningful risk of breach of the peace may well be a fact-sensitive one; however, in this case at least, based on the allegations presented, the Court is unconvinced that the Plaintiffs' claim is defective *per se* as a matter of law. It is not clear from the Second Amended Complaint when during the events of August 12, 2005, Defendant's false representations occurred, but Plaintiffs' response brief asserts that they took place when the repossession agent identified himself as an "officer" and stated that Plaintiffs would be charged with felony auto theft if they did not cooperate with him. (D.E. 93 at 3.) The Second Amended Complaint states that the repossession agent banged on the door and yelled, "This is Legal Investigations, I am Officer White, come to the door!" or words to that effect. (D.E. 70 ¶ 20.) When Plaintiffs refused to open the door or turn over the keys, the repossession man yelled, "Okay, I am going to the Dolton Police Department and file charges against you and have you arrested for grand theft auto." (D.E. 70 ¶ 28.) Plaintiffs then turned over their keys. Drawing all reasonable inferences in Plaintiffs' favor, the Court finds that the Plaintiffs, by alleging breach of the peace by impersonation of a police officer, have stated a claim under FDCPA Section 1692f(6) against Legal Investigations. Defendants' motion to dismiss this claim is therefore respectfully denied as to the putative Section 1692f(6) claim. Counts I–III are otherwise dismissed without prejudice.

13

**B.     Section 1983 Claim (Count V)**

Section 1983 imposes liability on state actors, and private individuals acting in collaboration with state officials, for using a "badge of authority" to deprive individuals of federal civil rights. *See, e.g., Fries v. Helsper*, 146 F.3d 452, 457 (7th Cir. 1998). To proceed under § 1983, Plaintiffs must show that an individual acting under color of law deprived them of federal civil rights. Plaintiffs have failed to do so.

Courts recognize two circumstances in which defendants act "under color of law:" (1) "when the state has cloaked the defendants in some degree of authority—normally through employment or some other agency relationship," or (2) "when the defendants have conspired or acted in concert with state officials to deprive a person of his civil rights." *Case v. Milewski*, 327 F.3d 564, 567 (7th Cir. 2003) (collecting cases). Private actors—as opposed to state officials—may be held liable under § 1983 only if the state effectively controls or directs the private party's actions or delegates a public function to a private entity. *See, e.g., Johnson v. LaRabida Children's Hosp.*, 372 F.3d 894, 896 (7th Cir. 2004).

Plaintiffs argue that Legal Investigations was acting under color of state law when its repossession man falsely represented himself as a police officer. (*See* D.E. 93 at 11 (citing D.E. 70 ¶¶ 75–76); *see* D.E. 70 ¶ 75 ("In effecting the repossession of Ms. Dudley's vehicle, Legal Investigations falsely represented themselves as law enforcement officers, thereby cloaking themselves as acting under the color of state law and violating 42 U.S.C. § 1983.").) Plaintiffs' argument, with all respect, is so groundless as to verge on sanctionable. Plaintiffs cite only one case in supposed support of their assertion, *see Meyers v. Redwood City*, 400 F.3d 765 (9th Cir. 2005), and that case is not on point. In *Meyers*, Plaintiffs sued police officers, not repossession

agents, alleging that those police officers, acting under color of state law, unlawfully intervened in a vehicle repossession and violated their constitutional rights. *See id.* at 767. Plaintiffs argue that *Meyers* should be extended to cases such as this one, where the repossession agent falsely "cloaked" himself with state authority. This contention, again, with all respect, is frivolous.

Even if a private actor pretends to be a police officer, that does not imbue him with the requisite "color of law" so as to ground potential liability under Section 1983. For private action to be "under color of law," the state itself must do the cloaking, or in some way act in concert with the private actor. *See, e.g., Case*, 327 F.3d at 567 (finding that defendants act under color of law "when the state has cloaked the defendants in some degree of authority"); *Fries*, 146 F.3d at 457 (finding that § 1983 imposes liability on private individuals acting in collaboration with state officials); *Koifman v. City of Chicago*, No. 04 C 6659, 2006 WL 897862, at * 3 (N.D. Ill. March 31, 2006) ("Private actors . . . may not be held liable under this section unless the state effectively controls or directs the private party's actions or delegates a public function to a private entity.") (citing *Johnson*, 372 F.3d at 896, and *Payton v. Rush Presbyterian-St. Luke's Med. Ctr.*, 184 F.3d 623, 628 (7th Cir. 1999)). None of the cases support liability for a private actor acting purely privately, though in the false guise of a state actor. Indeed, such a finding of liability would fly in the face of the purpose of § 1983, which is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed civil rights. *See, e.g., Fries*, 146 F.3d at 457 ("The purpose of § 1983 is to deter state actors, and private individuals in collaboration with state officials, from using a 'badge of authority' to deprive individuals of rights guaranteed by the Constitution.") (internal citation and quotation marks omitted). Where, as here, plaintiffs make no allegation of state action, there can be no liability under § 1983. The

15

claim is dismissed with prejudice.

### C.    State Law Claims

In addition to their federal statutory claims, Plaintiffs also allege that Legal Investigations should be held liable for violations of state statutory and common law. They allege liability for Intentional Infliction of Emotional Distress (Count IV), violations of the Illinois Consumer Fraud Act (Count VI), conversion (Count VII), "the tort of wrongful repossession" (Count IX ), and "property damage" (Count X). Defendants argue that each of these claims should be dismissed for failure to state a claim. For the reasons discussed below, Defendants motions are granted in part and denied in part.

### 1.    Intentional Infliction of Emotional Distress (Count IV)

Count IV of the Second Amended Complaint alleges that Legal Investigations "acted in a manner that is extreme and outrageous and transcended all bounds of decency" in repossessing Plaintiffs' truck, in violation of the common law tort of intentional infliction of emotional distress. (D.E. 70 ¶ 63.) To state a claim for IIED under Illinois law, Plaintiff must establish that: (1) the defendants' conduct was extreme and outrageous; (2) the defendants either intended this conduct to inflict severe emotional distress, or knew that there was a high probability that this conduct would cause severe emotional distress; and (3) the defendants conduct in fact caused severe emotional distress. *See, e.g., Doe v. Calumet City*, 641 N.E.2d 498, 506 (Ill. 1994).

Whether conduct is extreme and outrageous is judged by an objective standard. *See, e.g., Van Stan v. Fancy Colours & Co.*, 125 F.3d 563, 567 (7th Cir. 1997). "Conduct is extreme and outrageous only if the conduct has been so outrageous in character and so extreme in degree, as to go beyond all possible bounds of decency." *Id.* (collecting cases; internal quotation marks

16

omitted). Furthermore, the duress inflicted must be "so severe that no reasonable man could be expected to endure it." *Harriston v. Chicago Tribune Co.*, 992 F.2d 697, 703 (7th Cir. 1993) (internal quotation marks and citation omitted). "[T]he tort does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." *Farrar v. City of Chicago*, 291 F. Supp. 2d 747, 754 (N.D. Ill. 2003) (citing *McGrath v. Fahey*, 533 N.E.2d 806, 809 (Ill. 1988)) (internal quotation marks omitted). Moreover, it is not enough that the defendant has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice,' or a degree of aggravation that would entitle the plaintiff to punitive damages for another tort. *See, e.g., Van Stan*, 125 F.3d at 567. Liability has been found "only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency." *Farrar*, 291 F. Supp. 2d at 754 (internal quotation marks and citation omitted). Illinois case law instructs that where the defendant has power or authority over a plaintiff, and has made credible threats to use that power against the plaintiff and to his detriment, the more likely that defendant's conduct will be deemed outrageous. *See, e.g., McGrath*, 533 N.E.2d at 809–10. The Restatement specifically mentions school authorities, landlords, and collecting creditors as examples of the types of individuals who may be positioned to exercise power or authority over a plaintiff. *See id.* (citing Restatement (Second) of Torts § 46, comment e, at 74 (1965)).

In this case, the Court finds that Plaintiffs have at least stated a claim against Legal Investigations for intentional infliction of emotional distress sufficient to survive a Rule 12(b)(6) challenge. Defendant's repossession agent allegedly purported to exercise authority over Plaintiff by impersonating a police officer. Plaintiffs allege that Defendant's conduct was

17

"extreme and outrageous and transcended all bounds of decency" (D.E. 70 ¶ 63), and that Defendant's conduct was improperly motivated, intentional, and reckless (*id.* ¶ 68). At this stage of the litigation, the Court cannot state as a matter of law that the facts alleged, along with later proof of any other facts not inconsistent with the pleaded averments, would be insufficient to ground a claim for intentional infliction of emotional distress. Plaintiffs claim may, of course, ultimately fail—see D.E. 101-2 at 11 (suggesting that it will fail on the eventual evidence)—but the motion to dismiss the IIED claim under Rule 12(b)(6) is respectfully denied.

## 2. Illinois Consumer Fraud Act Claim (Count VI)

In Count VI, Plaintiffs allege that Legal Investigations violated the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/2 ("Illinois Consumer Fraud Act"). (D.E. 70 ¶ 79.) Specifically, Plaintiffs allege that Defendant violated the Illinois Consumer Fraud Act based on "Officer White's" impersonation of a police officer and his assertion to Mr. Dudley that he would be arrested for grand theft auto. (D.E. 70 ¶ 81.) Defendant Legal Investigations has moved to dismiss Count VI for failure to plead with particularity and for failure to allege damages. (D.E. 83 at 7.)

To state a claim under the Illinois Consumer Fraud Act, a plaintiff must allege that (1) the defendant engaged in a deceptive act or practice, (2) with the intent that the plaintiff rely on the deception, (3) in the course of trade or commerce, and (4) the deception was the proximate cause of the claimant's alleged injury. *See e.g., Costa v. Mauro Chevrolet, Inc.*, 390 F. Supp. 2d 720, 731 (N.D. Ill. 2005) (citing *Neff v. Capital Acquisitions & Mgmt. Co.*, 238 F. Supp. 2d 986, 994 (N.D. Ill. 2002)). A complaint alleging a violation of the Illinois Consumer Fraud Act must be pleaded with the same particularity and specificity under Rule 9(b) as that required for common

18

law fraud. *See, e.g., Costa*, 390 F. Supp. 2d at 731 (collecting cases). Specifically, a plaintiff must state the identity of the person making the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated. *See, e.g., Sears*, 912 F.2d at 893; *DiLeo*, 901 F.3d at 627.

Upon review of the Second Amended Complaint, it appears that Plaintiffs have satisfied Rule 9(b)'s particularity requirement. The Complaint alleges that on August 12, 2004, Officer White "represented himself to be a law enforcement officer with the intent that Plaintiffs, who are consumers, rely on his acts, or with intent that Plaintiffs rely on his concealment, suppression and omission of material facts." (D.E. 70 ¶ 80.) The alleged misrepresentations pleaded include "Officer White's" impersonation of a police officer and his assertion to Mr. Dudley that he would be arrested for grand theft auto. (*Id.* ¶¶ 80–81.) Plaintiffs also allege that Defendant intended Plaintiffs to rely on these misrepresentations because they were meant to procure the return of Plaintiffs' vehicle (*id.* ¶ 83), and that as a proximate result of Defendant's conduct, Plaintiffs suffered aggravation, inconvenience, mental anguish, and emotional distress (*id.* ¶ 84).

With respect to Defendant's argument that the Complaint fails to allege any injury, the Court respectfully disagrees. "[I]t is well established in Illinois that actual damages include compensation for mental suffering." *Greisz v. Household Bank (Illinois)*, 8 F. Supp. 2d 1031, 1043 (N.D. Ill. 1998) (collecting cases; internal quotation marks and citation omitted); *accord Roche v. Fireside Chrysler-Plymouth, Mazda, Inc.*, 600 N.E.2d 1218, 1228 (Ill. App. Ct. 1992) (holding that a jury award of $750 for "aggravation and inconvenience" for violation of the Illinois Consumer Fraud Act was not erroneous). Therefore, Plaintiffs allegations of "aggravation, inconvenience, mental anguish, and emotional distress" suffered as a result of

19

Defendant's conduct are sufficient to plead damages. Defendant's motion to dismiss Count VI is respectfully denied.

### 3.    Conversion Claim (Count VII)

Count VII alleges conversion of "numerous items of valuable personal property" that were located in Plaintiffs' truck at the time it was repossessed and that allegedly were never returned to Plaintiffs. (D.E. 70 ¶¶ 96, 99.) Defendants argue that Plaintiffs have not stated a claim for conversion because they have not identified the property converted. (D.E. 83 at 8; D.E. 101-2 at 13.)

Conversion is an unauthorized assumption of the right to possession or ownership of personal property. *See Jensen v. Chicago & Western Indiana R. Co.*, 419 N.E.2d 578, 592 (Ill. App. Ct. 1981); *accord Hoffman v. Allstate Ins. Co.*, 407 N.E.2d 156, 158 (Ill. App. Ct. 1980)). A party claiming a conversion must allege (1) an unauthorized and wrongful assumption of control, dominion or ownership by a person over the personalty of another; (2) his right in the property; (3) his right to the immediate possession of the property, absolute and unconditional; and (4) a demand for possession. *See, e.g., id.* (citing *Farns Associates, Inc. v. Sternback*, 395 N.E.2d 1103, 1106 (Ill. App. Ct. 1979); *accord Fortech, L.L.C. v. R.W. Dunteman Co., Inc.*, 852 N.E.2d 451, 456 (Ill. App. Ct. 2006).

Plaintiffs state that "numerous items of valuable personal property were located inside" the truck when it was repossessed. (D.E. 70 ¶ 96.) Furthermore, Plaintiffs allege that these items of personal property were not the subject of any security agreement between Plaintiff and Wells Fargo, the holder of Ms. Dudley's car note. (*Id.* ¶ 97.) Plaintiffs allege they had an unconditional right to immediate possession of these items of personal property and made a

20

demand for their return. (*Id.* ¶ 98.) Plaintiffs also allege that Legal Investigations wrongfully assumed control and ownership over their personal property. (*Id.* ¶ 99.) The Court finds that these allegations are adequate to state a claim for conversion under Rule 12(b)(6).

In the alternative, Defendants request that the court order Plaintiffs to file a more definite statement of their conversion claim. (D.E. 101-2 at 13.) In this regard, the Federal Rules of Civil Procedure provide:

> If a pleading to which a responsive pleading is permitted is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading, the party may move for a more definite statement before interposing a responsive pleading. The motion shall point out the defects complained of and the details desired.

Fed. R. Civ. P. 12(e). A more definite statement will be required only when the pleading is "so vague or ambiguous that the opposing party cannot respond, even with a simple denial, in good faith or without prejudice to himself." *Delta Education, Inc. v. Langlois*, 719 F. Supp. 42, 50 (D. N.H. 1989) (internal quotation marks and citation omitted). The Rule 12(e) "motion is granted sparingly since it is not to be used as a substitute for discovery in trial preparation, but is to be used only when a pleading is too general." *Town of Hooksett School Dist. v. W.R. Grace & Co.*, 617 F. Supp. 126, 135 (D. N.H. 1984) (internal citation omitted). Whether to grant a Rule 12(e) motion for a more definite statement is a matter within the discretion of the trial court. *See, e.g.*, *Delta Education, Inc.*, 719 F. Supp. at 51 (collecting authorities).

In this case, Plaintiffs' conversion claim is somewhat vague in that it does not specify what personal property was allegedly converted. It is clear, however, that Plaintiffs allege that the various items of personal property were located in the car, and the claim also indicates when the conversion allegedly occurred. Defendants can determine precisely what items are at issue

21

through an interrogatory or other discovery devices. The Rule 12(e) motion is denied.

### 4. Wrongful Repossession Claim (Count IX)

Count IX of the Second Amended Complaint alleges that Legal Investigations committed the tort of wrongful repossession and that Plaintiffs suffered damages as a result. (D.E. 70 ¶¶ 105–06.) Legal Investigations asserts that this count should be dismissed because Plaintiffs have not alleged that the repossession men committed any breach of peace. (D.E. 83 at 10.) This is the Defendant's only real objection to the claim, so the Court will proceed to analyze that objection alone.

As suggested, to state a claim for wrongful repossession, a plaintiff must allege that the repossession of the vehicle involved a breach of the peace. Section 9-609 of the Illinois Uniform Commercial Code provides: "After default, a secured party . . . may take possession of the collateral . . . without judicial process, if it proceeds without breach of the peace." 810 ILCS 5/9-609. The term "breach of the peace" connotes conduct that incites or is likely to incite immediate public turbulence, or that leads to or is likely to lead to an immediate loss of public order and tranquility. *See, e.g., Koontz,* 661 N.E.2d at 1173. The probability of violence at the time immediately prior to the repossession is an element in determining whether a breach of the peace has occurred. *See, e.g., id.* As discussed in Part I.A above, in this context, impersonating a police officer may constitute a breach of the peace. Reading the complaint generously, Plaintiffs alleged that Legal Investigations' agent, the ersatz "Officer White," impersonated a police officer when he first attempted to repossess Plaintiffs' vehicle on August 12, 2005. There are also allegations that "Officer White" was kicking on the Plaintiffs' door in the middle of the night, which prompted Mr. Dudley to arm himself with a baseball bat. Drawing all reasonable

22

inferences in Plaintiffs' favor (*i.e.*, taking these allegations to mean that Officer White's impersonation of a police officer on August 12 infected the August 14 repossession, or that they all were part and parcel of one continuing event), the Court finds that Plaintiffs have stated a claim for wrongful repossession. Therefore, Defendants' motions to dismiss this count are respectfully denied.

### 5. Property Damage Claim (Count X)

Count X—which is mistitled as a second "Count IX"—states that Defendants committed the tort of "property damage" vis-a-vis the Plaintiffs. (D.E. 70 at 16 (titling claim).) The Court dismisses this claim without prejudice. Upon challenge, Plaintiffs offer no authority supporting the existence of the Illinois tort of "property damage," nor is authority recognizing such a tort known to the Court. If Plaintiffs are aware of such authority under Illinois law, they can replead, but this count, as framed, appears to state no putative claim under Illinois law.

## II. Claims against American Recovery

Plaintiffs' Second Amended Complaint alleges that American Recovery is indirectly liable for all of Legal Investigations' actions. Specifically, Plaintiffs assert liability against American Recovery in Counts IV (intentional infliction of emotional distress), V ( Section 1983), VI (Illinois Consumer Fraud Act), VII (conversion), VIII (alleged vicarious liability for Legal Investigations' FDCPA violations), IX (wrongful repossession), and X ("property damage" claim). For the reasons discussed below, the motion to dismiss as to these claims is granted in part and denied in part.

23

### A. The FDCPA Claim Against American Recovery Service

#### 1. The Statute of Limitations Issue Concerning the FDCPA Claim Is Not Properly Resolved Under Rule 12(b)(6)

Section 1692k(d) of the FDCPA provides that "[a]n action to enforce any liability created by this subchapter may be brought in any appropriate United States district court without regard to the amount in controversy, or in any other court of competent jurisdiction, within one year from the date on which the violation occurs." 15 U.S.C. § 1692k(d). The one-year statute of limitations began to run no later than August 16, 2004, after "Officer White" and his colleague first visited the Plaintiffs and after they returned to repossess the car. Plaintiffs filed their initial complaint on August 12, 2005, within the limitations period. (D.E. 1.)

Defendant Patrick K. Willis Co., Inc. (which Plaintiffs allege does business under the name "American Recovery Service") alleges that the charges against it were untimely because Plaintiffs failed to serve the Defendant when the Defendant was named in subsequent iterations of the complaint as required by the statute of limitations and Fed. R. Civ. P. 15. This argument is a non-frivolous one, although it is not clear whether it ultimately will prevail. What is clear, however, is that the answer to the question cannot fairly be issued under a Rule 12(b)(6) analysis.

Precedent teaches that a claim of untimeliness under the statute of limitations is an affirmative defense, *see* Fed. R. Civ. P. 8, and that the validity of such affirmative defenses normally cannot be resolved under Rule 12(b)(6). *See, e.g., Xechem, Inc. v. Bristol-Myers Squibb Co.*, 372 F.3d 899, 901 (7th Cir. 2004) ("Only when the plaintiff pleads itself out of court—that is, admits all the ingredients of an impenetrable defense—may a complaint that otherwise states a claim be dismissed under Rule 12(b)(6).") (collecting cases); *accord, e.g.,*

*Walker v. Thompson*, 288 F.3d 1005, 1010 (7th Cir. 2002) (discussing statute of limitations issues). In this case, the proper disposition of Defendant Patrick K. Willis Co., Inc./American Recovery Service's statute of limitations/Rule 15 argument will be affected by issues outside the averments in the complaints. For example, the relationship (if any) between Patrick K. Willis Co./American Recovery Service and "American Recovery Service, Inc." a California entity that was served well before the Defendant was in this case, is not clear from the pleadings. In addition, the question of Defendant Patrick K. Willis/American Recovery Service's knowledge of any suit against it or even of attempt to serve it is outside the averments in the Second Amended Complaint. *See generally*, *e.g.*, D.E. 18 at 2 & Ex. A (discussing possible relevant evidence). These issues are only examples; the parties make various factual assertions and few of those assertions, if any, are firmly rooted in the allegations of the operative complaint.

As a result, the Court follows applicable precedent and declines to attempt to evalute whether Defendant Patrick K. Willis Co., Inc./American Recovery has a valid limitations defense. That issue will be resolved, if and when appropriate, after discovery is concluded. *Accord Xechem, Inc.*, 372 F.3d at 901.

### 2. The Merit of Any FDCPA Claim against American Recovery Based On Vicarious or Secondary Liability Also Is Fact Dependent

Plaintiffs' Second Amended Complaint alleges in Count VIII that American Recovery is liable for violations by Legal Investigations of the FDCPA. As previously explained, the statutory provision potentially implicated by the facts pleaded is Section 1692f(6) of the FDCPA. Defendant American Recovery argues that, even if Legal Investigations allegedly incurred potential liability under Section 1692f(6), as a matter of law, American Recovery cannot be liable

on the facts pleaded. In so arguing, American Recovery relies on *Scally v. Hilco Receivables, LLC*, 392 F. Supp. 2d 1036 (N.D. Ill. 2005) (Zagel, J.). (*See* D.E. 101-2 at 7–8.)

Plaintiffs respond with a laundry-list of objections to this argument—at least some of which appear quite far afield. Nonetheless, it is clear that, for purposes of Rule 12(b)(6) analysis at least, the facts pleaded do not mandate the finding that American Recovery could not be liable for the actions of Legal Investigations, and therefore Rule 12(b)(6) dismissal of the FDCPA claim is inappropriate.

In *Scally*, Judge Zagel suggested that there are at least some situations where one entity can be vicariously liable for the actions of another entity involved in activities that might implicate the provisions of the FDCPA. *See id.*, 392 F. Supp. 2d at 1038–39. Judge Zagel reviewed certain limited caselaw that has developed in this area, and he noted that there are at least some situations where vicarious liability has been found: *e.g.*, where both entities (the defendant/debt collector and its servicing agent) were limited partnerships that shared a common general partner, *see Scally*, 392 F. Supp. 2d at 1039 (citation omitted), or where a debt collector hired an attorney to engage in debt collection on the debt collector's behalf. *See id.* at 1039 & nn.4–5. *Scally* suggested at least that the trigger for vicarious liability is a fiduciary relationship, which would, for example, require an element of control by the principal in a situation where a plaintiff sought to invoke general agency principles to make the putative defendant/principal responsible for the acts of the putative agent. *See id.* at 1040. On summary judgment, *Scally* found that the facts presented merely showed an outsourcing relationship that lacked such attributes of control by the putative principal to ground liability for the acts of the supposed agent. *See id.* ("These facts are not sufficient to establish that MRS acted merely as an agent of

26

Hilco. MRS's daily, weekly and monthly routine reports of its activities were not intended to, and did not, give Hilco control over MRS's routine interactions with debtors."). Thus, *Scally* entered summary judgment in favor of the putative principal, Hilco, concerning the alleged acts of the putative agent, MRS. *See id.* at 1040–41.

At this stage of the litigation, the Court may not make factual assessments about whether American Recovery had a fiduciary relationship with Legal Investigations or venture guesses about any degree of control involved. That issue, if able to be resolved short of trial at all, will require exploration through discovery. As a result, the Court declines to dismiss any FDCPA Section 1692f(6) claim against American Recovery on such basis under Fed. R. Civ. P. 12(b)(6).

**B.     Section 1983 Claim against American Recovery**

As discussed in Part I.B above, Plaintiffs have not stated a claim under 42 U.S.C. § 1983 against Legal Investigations. Therefore, there can be no derivative § 1983 claim against American Recovery.

Moreover, even if Plaintiffs could somehow state a Section 1983 claim against Legal Investigations, an undisputed private actor—which Plaintiffs cannot—it is well established that "[s]ection 1983 will not support a claim based on a respondeat superior theory of liability." *Polk Co. v. Dodson*, 454 U.S. 312, 325 (1981); *accord, e.g., Iskander v. Village of Forest Park*, 690 F.2d 126, 128 (7th Cir. 1982); *Powe v. City of Chicago*, 664 F.2d 639, 649 (7th Cir. 1981). "[J]ust as a municipal corporation is not vicariously liable upon a theory of respondeat superior for the constitutional torts of its employees, *Monell v. Department of Social Services*, 436 U.S. 658, 694 (1978), a private corporation is not vicariously liable under § 1983 for its employees' [or agents'] deprivations of others' civil rights." *Iskander*, 690 F.2d at 128; *accord, e.g., Ridlen*

*v. Four County Counseling Center*, 809 F. Supp. 1343, 1351 n.4 (N.D. Ind. 1992) (collecting extensive federal appellate authority). Therefore, Plaintiffs' § 1983 claim against American Recovery is defective as a matter of law and is dismissed with prejudice.

## C. State Law Claims

Plaintiffs allege that American Recovery is liable for all of Legal Investigations' actions, including the actions constituting Plaintiffs' state law claims. As discussed below, the Illinois Consumer Fraud Act does not provide for derivative liability but instead requires personal involvement of a defendant; accordingly, Plaintiffs have not stated a claim against American Recovery under ICFA. American Recovery also offers arguments that essentially track those of Legal Investigations concerning Plaintiffs' remaining state law claims. As a result, Plaintiffs' state law claims for intentional infliction of emotional distress, conversion, and wrongful repossession survive American Recovery's motions to dismiss. The claim against American Recovery for "property damage" is dismissed without prejudice.

### 1. Illinois Consumer Fraud Act Claim

Count VI, under the Illinois Consumer Fraud Act, alleges vicarious liability on the part of Defendant American Recovery for Legal Investigations' alleged deceptive conduct. (D.E. 70 ¶ 90.) American Recovery argues that Count VI should be dismissed with respect to it because Plaintiffs have not alleged that American Recovery engaged in a deceptive act or practice, that American Recovery intended Plaintiffs to rely on any alleged deception, or that the deception injured Plaintiffs. (D.E. 101-2 at 9.) The Court agrees with American Recovery that Plaintiffs have not sufficiently alleged that it engaged in a deceptive act or practice, or that it intended Plaintiffs to rely on Legal Investigations' alleged deception. Therefore, Plaintiffs have failed to

28

aver a Consumer Fraud Act claim against American Recovery.

Substantial authority in this judicial district has held that derivative liability is not allowed under the Illinois Consumer Fraud Act. *See, e.g., Murry v. America's Mortg. Banc, Inc.,* No. 03 C 5811, 2004 WL 5010145, at *7 (N.D. Ill. July 6, 2004); *Dowdy v. First Met. Mort. Co., et al.,* No. 01 C 7211, 2002 WL 745851, at *2–3 (N.D. Ill. Jan.29, 2002); *accord, e.g., Jackson v. South Holland Dodge, Inc.,* 755 N.E.2d 462, 471 (Ill. 2001); *Zekman v. Direct Am. Marketers, Inc.,* 695 N.E.2d 853, 859 (Ill. 1998). To prevail on a claim under the Illinois Consumer Fraud Act, a plaintiff must be able to show that (1) the defendant engaged in a deceptive act or practice, (2) with the intent that the plaintiff rely on the deception, (3) in the course of trade or commerce, and (4) the deception was the proximate cause of the claimant's alleged injury. *See Neff,* 238 F. Supp. 2d at 994 (citing *Connick v. Suzuki Motor Co.,* 675 N.E.2d 584, 593 (Ill. 1997)). The Illinois Supreme Court has emphasized, however, that liability under the Illinois Fraud Act is limited to defendants who have actually participated in the scheme to defraud the plaintiff. *See, e.g., Murry,* 2004 WL 5010145, at *7 (stating that the "sine qua non" of an allegation of a violation of the Illinois Consumer Fraud Act is that "the defendant actually participated in the scheme to defraud the plaintiff") (citing *Jackson,* 755 N.E.2d at 471, and *Zekman,* 695 N.E.2d at 859); *Dowdy,* 2002 WL 745851, at *2 ("Illinois law is clear on the point that only the perpetrator of the fraud, and not a subsequent assignee, can be liable for a violation of the ICFA.") (citing *Zekman,* 695 N.E.2d at 859–60). Emphasizing the requirement of actual participation, the Illinois Supreme Court has held that the Illinois Consumer Fraud Act "does not include anything that makes it unlawful to knowingly receive the benefits of another's fraud." *Zekman,* 695 N.E.2d at 859. Instead, to state a claim, "plaintiffs would have to allege that 'the assignee['s]

fraud is active and direct.'" *Dowdy*, 2002 WL 745851, at \*3 (quoting *Jackson*, 755 N.E.2d at 471).

In this case, American Recovery is not an assignee, as are the defendants in some of the cases just cited, but, like an assignee, American Recovery did not directly participate in the alleged fraud; it merely benefitted from that supposed fraud. This is not the same as direct and active participation in the fraud. To state a claim for derivative liability against American Recovery, Plaintiffs would have to claim that its fraud was active and direct. Plaintiffs make no such allegation here. Plaintiffs allege that American Recovery was "directly involved in the wrongful repossession" (D.E. 70 ¶ 89), but Plaintiffs do not specifically plead—and please recall, Fed. R. Civ. P. 9(b) standards are applicable here—that American Recovery engaged in a deceptive act or practice with the intent that the plaintiff rely on the deception. Instead, Plaintiffs assert only that American Recovery "acted in reckless disregard of the rights of Plaintiffs and acted with willful and gross negligence during the process of hiring, supervising and instructing Legal Investigations." (D.E. 70 ¶ 93.) Based on the precedent discussed above barring derivative liability under the Illinois Fraud Act, the Court finds that Plaintiffs allegations fail to state a claim against American Recovery.[2] The claim is dismissed without prejudice.

---

[2] Any attempt to sue Mr. Vitello under the ICFA fails for the same reason. There are no averments outlining or adumbrating any ICFA claim against him at all.

### 2. Plaintiffs' IIED, Conversion, Wrongful Repossession, and Property Damage Claims (Counts IV, VII, IX, and X)

Plaintiffs have adequately stated claims for IIED, conversion, and wrongful repossession against Legal Investigations. (*See* Part I.C, *supra*). American Recovery's arguments for dismissal of these claims essentially track the arguments presented by Legal Investigations, and accordingly, because the claims against Legal Investigations survive Rule 12(b)(6) challenge, those against American Recovery survive as well. Similarly, because Plaintiffs' "property damage" claim against Legal Investigations is dismissed, the derivative claim against American Recovery is dismissed without prejudice on the same basis.

### III. Claims against Thomas Vitello

Plaintiffs allege that, as Legal Investigations' president and shareholder, Thomas Vitello is individually liable for Legal Investigations' FDCPA violations (Counts I, II, and III) and its Illinois Consumer Fraud Act violation (Count VI). The Seventh Circuit has condemned boilerplate allegations of individual liability as against owners, officers, and directors of debt collection companies; in fact, it has stated on multiple occasions that such suits are notable candidates for potential sanctions under Rule 11. *See White v. Goodman*, 200 F.3d 1016, 1019 (7th Cir. 2000) (stating that the joinder of a shareholder of debt collector as a defendant was "frivolous and the plaintiffs, represented by an experienced practitioner in consumer finance litigation, should have been sanctioned for what amounts to malicious prosecution"); *id.* (stating that suit against shareholder of debt collector was "a mirror image of the abusive tactics of debt collectors at which the statute is aimed"); *accord Pettit v. Retrieval Masters Credit Bureau, Inc.*, 211 F.3d 1057, 1059 (7th Cir. 2000) ("As we mentioned in *White*, FDCPA suits against the

owners of a debt collection company who are not otherwise debt collectors are frivolous and might well warrant sanctions. [*White*,] 200 F.3d at 1019. The holding of *White* is equally applicable to this case, . . . regardless of whether Fuchs [the largest shareholder and president of the defendant debt collection company] exercised extensive control over Retrieval Masters . . . ."); *id.* ("Under our holding in *White v. Goodman*, the extent of control exercised by an officer or shareholder is irrelevant to determining his liability under the FDCPA."). The only basis that Plaintiffs offer to even suggest that Mr. Vitello is personally liable is that he "directed, controlled and operated" the activities of Legal Investigations. (*See, e.g.*, D.E. 70 ¶ 56.) On the basis of the Seventh Circuit precedent identified above, this appears to be a path towards a sanctions motion, not a basis for finding that a claim against Mr. Vitello has been averred.

Nonetheless, in an abundance of caution, the Court will dismiss the claims against Mr. Vitello without prejudice. If Plaintiffs believe they have a good faith basis, consistent with Rule 11 and the precedent outlined above, to aver claims against Mr. Vitello, they may attempt to replead them, as the Seventh Circuit has at least left open the door for individual liability in a true veil-piercing situation. *See, e.g.*, *Pettit*, 211 F.3d at 1059 (stating that "the Act does not contemplate personal liability for shareholders or employees of debt collection companies, except perhaps in limited instances where the corporate veil is pierced."). For now, however, it is difficult to see how the boilerplate affirmative averments in the complaint concerning Mr. Vitello do not run afoul of *Pettit* and *White* as opposed to stating a claim. *Compare, e.g.*, D.E. 70 ¶ 56 (Plaintiffs suggesting the Mr. Vitello is personally liable because he "directed, controlled and operated" the activities of Legal Investigations), *with Pettit*, 211 F.3d at 1059 (stating that, "under our holding in *White v. Goodman*, the extent of control exercised by an officer or

shareholder is irrelevant to determining his liability under the FDCPA," and further suggesting that sanctions against the plaintiff might be warranted). Accordingly, this claim is dismissed without prejudice.

## CONCLUSION

For the reasons stated above, the Defendants' motions to dismiss are granted in part and denied in part.

So ordered.

Mark Filip
United States District Judge
Northern District of Illinois

Date: 3/22/07